916 P.2d 504

STATE of Arizona, ex rel., DEPARTMENT OF ECONOMIC SECURITY, (Sandra I. Miranda) Petitioner–Appellant,

v.

Moses M. AYALA, Sandra I. Miranda, Respondents–Appellees.

No. 1 CA–CV 95–0347.

Court of Appeals of Arizona, Division 1, Department A.

April 25, 1996.

315

Grant Woods, Attorney General, by Paula O. Burgess, Lisa M. Aubuchon, Assistant Attorneys General, Phoenix, for DES and Miranda.

Moses M. Ayala, Appellee, Florence, in Propria Persona.

OPINION

TOCI, Judge.

■ The state appeals the trial court's order declining to impose child support obligations because of a parent's incarceration. We conclude that incarceration alone is not a sufficient ground for relieving a parent of his obligation to support his children. Accordingly, we reverse and remand for a determination of the appropriate amount of child support.

## I. FACTS AND PROCEDURAL BACKGROUND

The state brought an action seeking to establish the paternity of Moses Ayala for the daughter of Sandra Miranda. The state also sought past and future child support payments. Miranda, a recipient of Aid to Families with Dependent Children benefits, assigned her right to seek child support payments to the state pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 46–407 (Supp.1995). Ayala was incarcerated at the time the state brought the action. Ayala's paternity was established, and he admitted to being the natural father of Miranda's child.

The trial court ordered Ayala to pay $825 in past child support "for the period before obligor was incarcerated." [1] It found, however, that Ayala was not liable to pay support due for the period of his incarceration. The court reasoned that where the state elects to incarcerate the obligor, it "creates a situation where [one] cannot be reasonably expected to contribute to the support of [his] children." Thus, the court refused to impose a child support award against Ayala or to order him to pay past child support for the time since his incarceration. This appeal followed.

## II. DISCUSSION

Natural parents are legally obligated to support their children. A.R.S. § 12–2451(A) (Supp.1995); *Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 576, 739 P.2d

1. This amount was based on the court attributing to Ayala the minimum wage of $4.25 per hour, which would result in a child support obligation of $55.00 per month, for the fifteen months he was not incarcerated.

794, 797 (1987). Once parentage is established in a paternity action:

> the court shall direct, using a retroactive application of the child support guidelines, the amount which the [parent] shall pay for the past support of the child.... In determining the amount of current child support for the child, the court shall apply the child support guidelines.

A.R.S. § 12–849(A) (Supp.1994). The Arizona Supreme Court has established Child Support Guidelines ("Guidelines") pursuant to A.R.S. section 25–320(A) (Supp.1995). This section makes the use of the Guidelines mandatory unless their application would be "inappropriate or unjust." *Id.*

In general, the Guidelines establish child support obligations by estimating an amount of the total monthly income of both parents that would be available to support their children. Guidelines § 7. Each parent is then responsible for his or her proportionate share of the total child support obligation based on that parent's share of the combined monthly income of both parents. *Id.* § 10. The Guidelines impute to a parent who is unemployed or working below full earning capacity an income "of at least minimum wage." *Id.* § 5(e); A.R.S. § 25–320(H) (Supp.1995).

■ The trial court may deviate from the Guidelines only when it makes a written finding that application of the Guidelines is inappropriate or unjust in the particular case and that deviation is in the best interest of the child. Guidelines § 15(a). Additionally, the court must show what the award would have been without the deviation and what the award is after deviation. *Id.* Child support awards are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Berger,* 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983). Here, the trial court found that Ayala was incarcerated and, therefore, could not be expected to earn even minimum wage. The trial court then concluded that Ayala was not required to pay child support.

We must decide whether incarceration makes the application of the Guidelines *per se* inappropriate and unjust. Other jurisdictions that have addressed the issue of whether incarceration should relieve a parent of his child support obligation are divided.[2] *See* Frank J. Wozniak, Annotation, *Loss of Income Due to Incarceration as Affecting Child Support Obligation,* 27 A.L.R.5th 540 (1995).

Some jurisdictions have held that incarceration does not relieve a parent of the duty to support his children. *Division of Child Support Enforcement ex rel. Harper v. Barrows,* 570 A.2d 1180 (Del.1990); *Ross v. Ross,* 581 N.E.2d 982 (Ind.App.1991); *In re Marriage of Phillips,* 493 N.W.2d 872 (Iowa App.1992); *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615 (1985); *Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051 (1983); *Koch v. Williams,* 456 N.W.2d 299 (N.D.1990); *Cole v. Cole,* 70 Ohio App.3d 188, 590 N.E.2d 862 (1990); *Proctor v. Proctor,* 773 P.2d 1389 (Utah App.1989).

Others have held that a parent is not liable for child support payments while incarcerated unless the parent has assets or other income available to make such payments. *Clemans v. Collins,* 679 P.2d 1041–42 (Alaska 1984); *Commissioner of Human Resources v. Bridgeforth,* 42 Conn.Supp. 126, 604 A.2d 836 (Conn.Super.1992); *Pierce v. Pierce,* 162 Mich.App. 367, 412 N.W.2d 291 (1987); *Franzen v. Borders,* 521 N.W.2d 626 (Minn. App.1994); *Johnson v. O'Neill,* 461 N.W.2d 507 (Minn.App.1990); *Foster v. Foster,* 99 A.D.2d 284, 471 N.Y.S.2d 867 (App.1984); *In re Marriage of Edmonds,* 53 Or.App. 539, 633 P.2d 4, 5 (1981), *overruled by In re Marriage of Willis,* 109 Or.App. 584, 820 P.2d 858 (1991), *reversed,* 314 Or. 566, 840 P.2d 697 (1992); *Leasure v. Leasure,* 378 Pa.Super. 613, 549 A.2d 225 (1988).

The courts have split on whether incarceration is a voluntary reduction of income. Some have found that incarceration was the foreseeable result of voluntary criminal activity and declined to suspend the support obligation. *Barrows,* 570 A.2d at 1183 ("[I]ncar-

---

**2.** Most of these courts have addressed the issue in the context of an attempt to modify an existing support obligation. We do not find this proce-

dural difference to be of consequence in examining the issue.

ceration is a foreseeable result of criminal activity and does not *ipso facto* relieve one of the obligation to pay child support."); *Davis v. Vance*, 574 N.E.2d 330 (Ind.App.1991) ("willful, unlawful act of the obligor" cannot support reduction); *Marriage of Phillips*, 493 N.W.2d at 878 (foreseeable consequence of criminal activity); *Ohler*, 369 N.W.2d at 618 ("incarceration is certainly a foreseeable result of criminal activity"); *Koch*, 456 N.W.2d at 301 (self-induced change of circumstances); *Cole*, 590 N.E.2d at 865 (incarceration is the result of a voluntary willful act); *Proctor*, 773 P.2d at 1391 (incarceration resulting from intentional criminal act equated with an able-bodied person who stops working). Others have found that incarceration is involuntary and considered a legitimate change of income. *People ex rel. Meyer v. Nein*, 209 Ill.App.3d 1087, 154 Ill.Dec. 436, 437, 568 N.E.2d 436, 437 (1991) (incarceration compared to involuntary lack of employment); *Redmon v. Redmon*, 823 S.W.2d 463, 465 (Ky.App.1992) (not a voluntary reduction of income); *Wills v. Jones*, 340 Md. 480, 667 A.2d 331, 334 (1995) (same); *Franzen*, 521 N.W.2d at 629 (same); *Leasure*, 549 A.2d 225, 227 (same); *In re Marriage of Blickenstaff*, 71 Wash.App. 489, 859 P.2d 646, 649–50 (1993) (same).

Courts have also disagreed over whether incarcerated parents should be denied reduction or suspension of their obligation under the equitable doctrine of unclean hands. Some courts have disallowed consideration of the incarcerated parent's lack of income because it is the direct result of his criminal conduct. *Marriage of Phillips*, 493 N.W.2d at 878; *Ohler*, 369 N.W.2d at 617; *Noddin*, 455 A.2d at 1053; *Koch*, 456 N.W.2d at 301. One court has rejected the unclean hands doctrine except when the parent is incarcerated for failure to pay child support. *Nein*, 154 Ill.Dec. at 436–37, 568 N.E.2d at 436–37.

There is also disagreement over whether suspending the child support obligation is in the best interest of the child. Two courts have found that suspension is not in the best interest of the child. *Marriage of Phillips*, 493 N.W.2d at 878 (provides no benefit to child); *Cole*, 590 N.E.2d at 865 (needs of child are not diminished while parent is in-

carcerated). Two other courts have found that it is in the child's best interest. *Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231, 1238 (App.1988) ("Imposing upon the incarcerated parent a continuing support obligation, beyond his ability to pay, does not help the child."); *Leasure*, 549 A.2d at 227 (same).

The growing trend appears to be that incarceration neither suspends a support obligation nor prohibits a reduction in the amount of support. Rather, the courts treat incarceration as one factor to be considered by the trial court in determining whether to reduce the support amount. *In re Marriage of Hamilton*, 857 P.2d 542, 544 (Colo.App. 1993) (listing factors); *Nab*, 757 P.2d at 1240 (considering several factors); *Wills*, 667 A.2d at 334, 339 (declining to adopt *per se* rule that incarcerated parents' support obligations are suspended; trial court must apply guidelines); *Oberg v. Oberg*, 869 S.W.2d 235, 238 (Mo.App.1993) (listing factors); *Thomasson v. Johnson*, 120 N.M. 512, 903 P.2d 254, 256–57 (App.1995) (incarceration is a factor to be considered in reducing support; listing factors); *In re Marriage of Blickenstaff*, 859 P.2d at 651 (court must consider "all factors bearing upon the needs of the child and the parent's ability to pay"); *Parker v. Parker*, 152 Wis.2d 1, 447 N.W.2d 64, 66 (App.1989) (listing factors).

We agree with these courts that incarceration alone does not justify the suspension of child support obligations. Neither the Guidelines nor the support statutes make an exception for incarcerated parents. Additionally, courts considering the issue have universally held that suspension of the child support obligation is improper where the incarcerated parent has sufficient assets or income to meet the obligation. *Barrows*, 570 A.2d at 1183; *In re Marriage of Blickenstaff*, 859 P.2d at 651 (Supp.1995). Many prisoners will have some income while incarcerated. *See* A.R.S. §§ 31–251(A); 31–252; 31–261; 31–331 through –334; and 41–1604.13(D)(2) (Supp.1995) (authorizing prison labor, work release, and allowing other means of employment for prisoners). Furthermore, relieving incarcerated parents of their support obligation would leave some children struggling while the parent is earning an income and

318

living free of room and board expenses. Indeed, the child's need for support continues throughout and is not altered by the parent's incarceration.

■ The Guidelines allow for deviation when the trial court finds that their application would be inappropriate and unjust and that the deviation is in the best interest of the child. Guidelines § 15(a). We hold that it is properly within the trial court's discretion to consider a parent's incarceration as a factor in making these determinations. Incarceration alone, however, is not a sufficient reason to suspend a support obligation. At a bare minimum, the trial court must consider the incarcerated parent's available assets and income or possible income.

■ Here, the trial court found that "because of [ ] Ayala's incarceration he does not have the ability to pay. Where the state elects to incarcerate the obligor, it cannot be expected that he has the ability to earn minimum wage." The court ordered that Ayala would have no child support obligation during his incarceration.

At the support hearing, Ayala testified that he was not working in the prison system at the time because he did not want to do so before he moved to another correctional facility in Arizona. He also testified that after his move he would be able to make ten cents an hour. There was no evidence of, or inquiry into, any other assets or income Ayala may have had from which he could make support payments.

## III. CONCLUSION

The only reason for the trial court's deviation from the Guidelines was Ayala's incarceration. We hold that incarceration alone does not justify suspending a support obligation and that the trial court erred. Additionally, the trial court did not make a specific finding of how deviation is in the best interest of the child. *See* Guidelines § 15(a). Accordingly, we reverse and remand to allow the trial court to inquire into Ayala's assets and to consider whether application of the Guidelines would be inappropriate and unjust and whether the deviation is in the best interest of the child. In doing so, the trial court should consider all factors relevant to that determination, not merely Ayala's incarceration.

CONTRERAS, P.J., and WEISBERG, JJ., concur.