946 P.2d 1291

In re the Marriage of Jacqueline
PEARSON, Petitioner–Appellee,
Cross Appellant,

v.

Jerry PEARSON, Respondent–
Appellant, Cross Appellee.

No. 1 CA–CV 96–0603.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 16, 1997.

Reconsideration Denied Oct. 21, 1997.

**232**

Law Offices of Gregg A. Thurston, P.C. by Gregg A. Thurston, Phoenix, for Respondent–Appellant, Cross Appellee.

Mehrens and Wilemon, P.A. by Craig Mehrens, Amy Wilemon, Phoenix, for Petitioner–Appellee, Cross Appellant.

## OPINION

EHRLICH, Presiding Judge.

Jerry Pearson appeals from the trial court's order increasing the amount of child support he must pay from $250 to $840 per month and the court's denial of his motion to amend or vacate the order or for a new trial. He also asserts that the court erred in denying his request for attorneys' fees. Jacqueline Pearson cross-appeals from the court's denial of her request for attorneys' fees. For the reasons given below, we affirm the judgment as modified.

### FACTS AND PROCEDURAL HISTORY

Jerry and Jacqueline were divorced in 1986. Jacqueline was awarded custody of their child and Jerry was ordered to pay $250 per month in child support. On October 10, 1995, Jacqueline petitioned to modify the amount of child support. While the parties agreed that Jacqueline's monthly income was $4357, they disputed the amount of Jerry's income. When the petition was filed, Jerry was employed by a catering corporation he solely owns.

At a hearing regarding Jacqueline's petition, the parties agreed to "proceed by avowal." The depositions of Jerry and of his accountant, Kim Giese, were admitted without objection. The trial court subsequently ruled as follows:

> [Jacqueline]'s gross monthly income is uncontested at $4,357.. [Jerry]'s salary as reflected on his 1995 W–2 form is $47,754. In addition to this, [Jerry] receives significant cash and non-cash benefits from his solely-owned catering business which should be included in his gross income. The exact extent and nature of these benefits is somewhat cloudy due to [Jerry]'s incomplete and evasive discovery. The corporation paid $11,902 to purchase a Harley Davidson motorcycle for [Jerry] in 1995. The corporation paid out $13,000 to [Jerry]'s parents in 1995, ostensibly for repayment of a personal loan, which should be included in [Jerry]'s gross income. In addition, the corporation provided [Jerry] the use of a sports car and paid $9,443.64 to purchase the vehicle in 1995. Based upon a pro rata division of mileage, [Jerry]'s personal use of this vehicle is 95% as compared to 5% for business use. This would add an additional $8,971 of income at a minimum to [Jerry]'s income. The corporation has also paid a rental income to [Jerry] in the past which amounted to $18,000 in 1994 and $41,000 in 1993. The court believes that [Jerry]'s income should at least be increased by the lower of these figures of $18,000. Adding these cash and non-cash benefits to [Jerry]'s income results in a gross annual income to [Jerry] of $99,627.... [Jerry] also has other personal financial benefits from his corporation.

> * * *

> At the present, it appears that [Jerry]'s income and benefits from his business are

sufficient to attribute an income to [Jerry] of at least $100,000....

The court then calculated the parties' child support obligations and ordered Jerry to pay $840 per month, beginning October 1, 1995.

Jerry moved for a new trial or that the court amend or vacate the order increasing the child support award, alleging that the evidence was insufficient to support the finding that his income was $100,000 per year. The motion was denied and Jerry appealed.

Jerry essentially raises four issues, which we restate as follows: (1) whether the trial court erroneously failed to consider the factors set forth in ARIZ.REV.STAT. ANN. ("A.R.S.") section 25–320(A) in modifying the child support award; (2) whether the court abused its discretion by incorrectly determining his salary and including certain items as income for the purpose of calculating the modified child support award; (3) whether the court correctly calculated the amount of child support based on the Child Support Guidelines and (4) whether the court should have allowed him to recover costs and attorneys' fees. Jacqueline asks that this court reverse the trial court's refusal to award her costs and attorneys' fees. Both parties request an award of costs and attorneys' fees incurred on appeal.

## DISCUSSION

■ Child-support awards may be modified only as to installments accruing after notice of the motion for modification and then "only upon a showing of changed circumstances which are substantial and continuing." A.R.S. § 25–327(A) (Supp.1996). "As with the original determination of a child support award, the decision whether changed circumstances exist to warrant modification of an award is within the sound discretion of the trial court." *Cummings v. Cummings,* 182 Ariz. 383, 387, 897 P.2d 685, 689 (App. 1994).

1. This version of the Guidelines was in effect when the trial court ruled on the modification action and we therefore analyze the issues on appeal based on this version of the Guidelines.

### A. Consideration of A.R.S. Section 25–320(A).

In relevant part, A.R.S. section 25–320(A) (Supp.1996) provides as follows:

A. ... The supreme court shall establish guidelines for determining the amount of child support. The amount resulting from the application of these guidelines shall be the amount of child support ordered unless a written finding is made, based on criteria approved by the supreme court, that application of the guidelines would be inappropriate or unjust in a particular case.... [T]he guidelines and criteria for deviation from them shall be based on all relevant factors, including:

1. The financial resources and needs of the child.

2. The financial resources and needs of the custodial parent.

3. The standard of living the child would have enjoyed had the marriage not been dissolved.

4. The physical and emotional condition of the child, and the child's educational needs.

5. The financial resources and needs of the noncustodial parent.

6. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

7. The duration of visitation and related expenses.

The court has complied with the legislative directive by issuing the "Arizona Child Support Guidelines Adopted By The Arizona Supreme Court For Actions Filed After May 31, 1994" ("Guidelines"),[1] including criteria for deviating from the guidelines and procedures for modifying child support awards. Guidelines, ¶¶ 15, 19. The Guidelines provide that "[e]ither parent may request the court to modify a child support order if application of the guidelines results in an award that varies 15 percent or more from the existing amount." Guidelines, ¶ 19.b.

The Guidelines, however, have since been revised. *See* Supreme Court Administrative Order dated July 10, 1996, adopting revised Guidelines effective October 31, 1996.

Jerry contends that, in addition to applying the Guidelines, the trial court must specifically address all of the factors set forth in A.R.S. section 25–320(A) when modifying a child-support award, citing *Brevick v. Brevick,* 129 Ariz. 51, 628 P.2d 599 (App.1981). He asserts that the court considered only his alleged increase in income in calculating the increase in child support and failed to consider the factors set forth in the statute.[2]

■ The *Brevick* case is irrelevant; it was decided before A.R.S. section 25–320(A) was amended in 1989. The statute as amended does not direct the trial court to consider the factors enumerated in section 25–320. Rather, it directs the supreme court to establish guidelines based on given factors and requires the trial court to follow the Guidelines, unless a deviation is justified based upon criteria set forth in the Guidelines. The court must consider "all relevant factors, including those set forth" in A.R.S. section 25–320(A) only if it intends to deviate from the Guidelines—and then the court may deviate from the Guidelines only if, among other criteria, "[a]pplication of the guidelines [is] inappropriate or unjust in a particular case" and "[d]eviation is in the best interest of the child." A.R.S. § 25–320(A). *See also* Guidelines, ¶ 15.a.1 and a.2. Because the parties did not request a deviation from the Guidelines, the trial court was not required to specifically consider the factors set forth in section 25–320(A).

Nevertheless, the "Guidelines do not replace the exercise of trial court discretion; they focus it." *Burnette v. Bender,* 184 Ariz. 301, 304, 908 P.2d 1086, 1089 (App.1995). We thus consider whether the court abused its discretion in applying the Guidelines to modify the child-support award in this case.

### B. Calculation of Jerry's Income

#### 1. Proceeding by Avowal

■ As a preliminary matter, Jerry has waived any right to now object that proceeding "by avowal" results in insufficient evidence to support the judgment. The parties in this case, when asked by the trial court, specifically agreed that the modification hearing would proceed in this manner. Proceeding by avowal does not allow the court to evaluate the demeanor and credibility of the witnesses but merely results in the attorneys' declaration of what the witnesses would state if called. It does not permit the creation of an appellate record suitable for a challenge to a witness or, on that basis, a challenge to the sufficiency of the evidence.

#### 2. Salary

Jerry argues that the trial court abused its discretion in determining his salary from the catering business by considering his past salary, rather than his salary as of the date the modification petition was filed, and by projecting the amount of his salary after the date of the hearing. He specifically asserts that the court gave insufficient consideration to his contention that, between October 1995 and June 1996, he earned $1833 per month or approximately $34,000 per year.

In its initial order scheduling the modification hearing, the trial court ordered both parties to bring documents, including proof of income, such as check stubs, W–2 forms and past income tax forms. No such documents were discussed at the hearing nor do any appear in the record for the period October 1995 to June 1996. Indeed, Jerry admitted in his deposition that, as of June 17, 1996, he had provided to Jacqueline, through discovery responses, documents related only to the amount of his income dated through 1995, despite her requests for more recent documents. Thus, it was impossible for Jacqueline to provide evidence to establish what salary Jerry earned after December 1995. The court did not abuse its discretion in finding that, based on the evidence available to it, Jerry's 1995 W–2 form, his income from salary was $47,754.

#### 3. Other Items of Income

Jerry adds that the trial court further erred in including the following items when

---

**2.** Jerry does not argue that the supreme court failed to consider all of the factors in promulgating the Guidelines and does not claim that the trial court should have deviated from the Guidelines. He merely asserts that, in addition to considering the Guidelines, the court should have considered the factors set forth in A.R.S. section 25–320.

calculating his income: (a) $11,902 paid by the corporation to purchase a Harley Davidson motorcycle titled in Jerry's name, which Jerry asserts was a loan; (b) a $13,000 payment to Jerry's parents in connection with an alleged loan; (c) $9443.64 paid by the corporation to purchase a Mitsubishi sports car titled in Jerry's name and, as the court found, used for corporate business only 5% of the time and (d) $18,000 rental income attributed to Jerry for the corporation's use of a portion of his home for business purposes. We consider whether sufficient evidence supports the court's conclusions regarding these disputed items of imputed income. "We will not set aside the trial court's findings of fact unless they are clearly erroneous." *Van Dyke v. Steinle*, 183 Ariz. 268, 273, 902 P.2d 1372, 1377 (App.1995).

### a. Motorcycle

Jerry admits that the corporation paid $11,902 for a Harley Davidson motorcycle titled in his name and that the motorcycle was purchased for his personal use. He contends, however, that the funds used for the purchase were a loan and not income.

■ The evidence is contradictory. In his deposition, Jerry said that he had not yet decided how the funds would be treated on the income-tax returns, although, later in the deposition, he stated that the funds were loaned from the corporation. Giese also believed the funds would be repaid, but Jerry never produced any notes payable, tax returns or other documents to establish that the funds used to purchase the motorcycle were a loan rather than income from the corporation, even though the modification hearing was not held until June 24, 1996, and the hearing on the motion for new trial was not held until September 23, 1996. On this record, we cannot say that the inclusion of these funds as income was "clearly erroneous" and we therefore uphold the decision.

### b. Payment to Jerry's Parents

■ The corporation paid $13,000 to Jerry's parents in 1995. Jerry claims that this was to repay, albeit two or three years ahead of schedule, a 1993 loan from his father to the corporation to purchase a liquor license.

Even accepting as true Jerry's assertions that the funds were a loan to the corporation and not to him personally, Jerry's voluntary choice to have the corporation pre-pay the loan does not allow him to exempt the funds, which otherwise could have been distributed to him, from his gross income for purposes of the Guidelines. *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995) (father's decision to retain profits and pay taxes inside the wholly-owned corporation "should not alter the amount of gross income charged to him for child support purposes"). We therefore affirm the trial court's inclusion of this item as income pursuant to the Guidelines.

### c. Sports Car

■ Jerry admits that the Mitsubishi sports car is titled in his name and that the corporation paid $9,443.64 towards its purchase in 1995. Additionally, the corporation's 1994 tax returns stated that the vehicle was used 5% of the time for business use and 95% of the time for personal use. Giese testified that, while the tax returns showed that Jerry used the vehicle predominantly for personal business, the corporation depreciated the asset. He agreed that, while Jerry "would be required to pick up personal use of his auto on his W–2 or his supplemental 1099," apparently this was not done. Additionally, Jerry conceded that the corporation's tax returns were erroneous, although he never submitted amended tax returns. Because evidence supports the trial court's decision, we uphold it.

### d. Rental Income

Finally, Jerry asserts that the trial court abused its discretion in allocating $18,000 in rental income to his salary for 1995. The parties agree that Jerry received $41,000 in rental income in 1993 and $18,000 in rental income in 1994. Giese testified that he did not believe that Jerry had rental income from the corporation for the use of his home in 1995 because it did not appear on the corporation's September 1995 unadjusted general ledger report. Given the past rental income and that it is undisputed that the corporation continued to operate from Jer-

ry's home, the low figure of $18,000 was a reasonable one to impute to Jerry as income.

The trial court found that, during 1995, Jerry's corporation provided him with a salary of $47,754 plus additional imputed income resulting in a gross annual income of $99,627. In other words, the expenditures by the corporation on Jerry's behalf were equivalent to providing Jerry with an income of approximately $100,000. Thus, the court implicitly found that Jerry's increase in income was "substantial" within the meaning of A.R.S. section 25–327 and the Guidelines.

While the trial court acknowledged that, as Jerry alleged, the corporation might lose its lease, which in turn might cause Jerry's 1996 income to decrease, it found this possibility "highly speculative" and properly left for the future. *Richards v. Richards,* 137 Ariz. 225, 226, 669 P.2d 1002, 1003 (App.1983) (when wife's income had been substantially reduced and remained so at time of hearing, trial court improperly terminated spousal maintenance in anticipation of increase in her future income, saying "[s]uch matters are best left to future modification proceedings"). Indeed, Jerry conceded that the lease could well be extended to April 1997. The court thus found that the corporation would continue to pay Jerry approximately $100,000 each year, unless the lease were terminated, in which case he could petition the court for a modification of the child-support award. Accordingly, it implicitly decided that Jerry's increase in income was "continuing" within the meaning of A.R.S. section 25–327 and the Guidelines.

The requirement that the increase in income must be "continuing" means that the trial court must base an increase in child support only on the payor's current income. It may not increase a child-support award to compensate for the payor's higher income in past years if the payor's current income is substantially lower. Nevertheless, the court need not restrict its view of the evidence to a few isolated months after the filing of the modification petition in order to determine a party's current income, particularly when such income is controlled by the party himself and is subject to possible manipulation upon the filing of the modification petition.

*Baker,* 183 Ariz. at 73, 900 P.2d at 767 (App. 1995). Rather, a court reasonably may consider evidence of income prior to the modification petition to assist in determining the individual's current income and whether it has "substantially" changed since the existing child support award was set. *Burnette,* 184 Ariz. at 304, 908 P.2d at 1089. Evidence regarding current or reasonably-projected income and also of recent years' past income likewise may assist the court in determining whether an increase in income is "continuing." *E.g., Cummings,* 182 Ariz. at 387, 897 P.2d at 689 (allowing consideration of gift income received over 18–month period prior to filing of petition to modify). Indeed, if the court finds that "earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity." Guidelines, ¶ 5.e; *see also Williams v. Williams,* 166 Ariz. 260, 266, 801 P.2d 495, 501 (App.1990) ("[b]ased upon the testimony regarding the husband's past earning history and his future earning capacity, we do not believe that the trial court erred in attributing income to the husband in the amount of $4,000 per month"). Certainly, evidence of prior years' earnings is relevant to determining "earning capacity." *Id.*

### C. Calculation of Child Support

The trial court incorrectly stated that Jerry had only one other child to support. Jacqueline does not dispute that Jerry has two other children for whom he must provide and this is supported by the record. The court, therefore, improperly adjusted Jerry's gross income according to the Guidelines. The recalculation of Jerry's monthly child-support payment, accordingly, is $798.

### D. Attorneys' Fees

Both parties protest the trial court's refusal to award costs and attorneys' fees. The decision whether to award attorneys' fees lies within the trial court's sound discretion, "with the focus on the parties' relative abilities to pay the fees incurred" in accord with A.R.S. section 25–324. *Hrudka v.*

*Hrudka,* 186 Ariz. 84, 94–95, 919 P.2d 179, 189–190 (App.1995). The failure to rule implies that the respective motions for fees were denied. *See Atchison, Topeka and Sante Fe Ry. Co. v. Parr,* 96 Ariz. 13, 15, 391 P.2d 575, 577 (1964). We do not find this to be an abuse of discretion.

In the exercise of our discretion, we award costs and fees on appeal to Jacqueline. *See* A.R.S. § 25–324.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed except as modified.

SULT and VOSS, JJ., concur.