955 P.2d 988

STATE of Arizona ex rel. the DEPARTMENT OF ECONOMIC SECURITY, (Roberta Kay McEvoy), Petitioner–Appellee,

v.

Warren Terence McEVOY, Respondent–Appellant.

No. 1 CA–CV96–0518.

Court of Appeals of Arizona, Division 1, Department B.

March 26, 1998.

Grant Woods, Attorney General by Kathleen P. Sweeney, Assistant Attorney General, Therese L. Martin, Assistant Attorney General, Phoenix, for Petitioner–Appellee.

Warren Terence McEvoy, Yuma, In Propria Persona.

## OPINION

SULT, Judge.

¶ 1 This appeal presents the issue whether a court, in calculating a parent's child support obligation, may admit and consider evidence of an obligated parent's incarceration offered to rebut the statutory presumption that all parents are capable of earning at least the federal minimum wage. We hold that a court may do so and accordingly vacate the child support order entered by the trial court and remand to that court for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Roberta and Warren McEvoy married in November 1981 and divorced approximately five years later. The decree of dissolution ordered Warren to pay child support of $340 per month for the couple's three minor children.

¶ 3 In July 1995, Warren was convicted on charges of conspiracy to transport marijuana and offer to transport marijuana, and was sentenced to eight and one-half years' imprisonment. Thereafter, Warren filed a Request to Modify Child Support, asking that his support obligation be reduced to five dollars per month. The Arizona Department of Economic Security ("the state"), which had been making welfare payments to Roberta, opposed the Request.

¶ 4 At the hearing on his Request, Warren asserted that the court should modify his obligation because incarceration had reduced his earning capacity. Specifically, Warren testified that he was earning twenty cents per hour, at a maximum of thirty hours per week, and had no other source of income. The state argued that any modification based on Warren's incarceration was inappropriate because he voluntarily reduced his earnings by being arrested and imprisoned.

¶ 5 The trial judge found that Warren's reduction in income due to incarceration constituted a substantial and continuing changed circumstance justifying modification under Arizona Revised Statutes Annotated ("A.R.S.") section 25–327(A) (Supp.1997). In attempting to determine each parent's gross income, the trial judge noted that Arizona had not addressed how courts should determine an incarcerated obligor's gross income. Based upon her reading of A.R.S. section 25–320(I) (Supp.1997) and State ex rel. Department of Economic Sec. v. Ayala, 185 Ariz. 314, 916 P.2d 504 (App.1996), the trial judge concluded that regardless of Warren's actual earnings while incarcerated, she was required to attribute to him a gross income of at least the federal minimum wage. Consequently, she calculated the minimum wage at $737 per month, attributed this amount to Warren as gross income rather than the five dollars per month he assertedly was making, and reduced his child support obligation from $340 to $276 per month. Warren timely appealed.

## ISSUES

¶ 6 The principal issue Warren raises on appeal is whether an obligor's reduction in income due to incarceration may, under sec-

tion 25–320(I), be admitted to show that he is incapable of earning the federal minimum wage. Warren raises several other issues relating to the modification of his child support obligation, which we address in turn. Finally, the state raises an issue regarding the effect our determination of the principal issue might have on A.R.S. section 25–511 (Supp.1997), the statute which criminalizes non-payment of child support.

## ANALYSIS

### I. Standard of Review

■ ¶ 7 A court may modify the child support provisions of a dissolution decree upon a showing of changed circumstances that are substantial and continuing. A.R.S. § 25–327(A). In considering a request for modification, courts are required to apply the Arizona Child Support Guidelines adopted by the Arizona Supreme Court ("guidelines"),[1] unless their application would be "inappropriate or unjust." A.R.S. § 25–320(A) (Supp. 1997); *Ayala*, 185 Ariz. at 316, 916 P.2d at 506. We will not disturb a trial court's decision regarding modification of a child support award absent an abuse of discretion. *Ayala*, 185 Ariz. at 316, 916 P.2d at 506.

### II. Incarceration and the Minimum Wage

¶ 8 Warren argues that the trial court was wrong in calculating his child support obligation based on a fictional income rather than his actual prison earnings. He asserts that Arizona law does not require that a minimum wage earning capacity be attributed to him in the face of clear evidence that his earning power while incarcerated is significantly below minimum wage. The state responds that Warren's incarceration must be viewed as a voluntary choice to reduce his pre-incarceration earning capacity, thereby precluding any modification of his existing support obligation. Alternatively, the state

proposes that the relevant statute and guideline must be construed to require attribution of an earning capacity of at least the federal minimum wage to an incarcerated child support obligor.

¶ 9 The applicable guideline, paragraph 5(e), provides in pertinent part:

If a parent is unemployed or working below full earning capacity, the court may consider the reasons. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity. Pursuant to Arizona Revised Statutes Section 25–320.G,[2] income of at least minimum wage shall be attributed to a parent ordered to pay child support.

The statute referenced in this guideline, section 25–320(I), provides:

The court shall presume, in absence of contrary testimony, that a noncustodial parent is capable of full-time employment at least at the federal adult minimum wage. This presumption does not apply to non-custodial parents under the age of eighteen who are attending high school.

■ ¶ 10 For its first proposition that no modification at all should be permitted, the state focuses on the first portion of guideline 5(e), which requires an "earning capacity" attribution if earnings are reduced as a matter of choice and not for reasonable cause. Citing cases from other jurisdictions which have so held,[3] the state argues that the commission of a criminal act is a voluntary choice, which choice necessarily encompasses the possibility of incarceration. Therefore, the state reasons, when incarceration does result, the obligor should be considered as having chosen incarceration and therefore treated no differently than if he had simply quit his job without reasonable cause. Under this interpretation, the incarcerated obli-

---

1. Warren's Request, filed on March 7, 1996, was governed by the 1994 version of the guidelines, not the October 1, 1996 version that the state cites. The differences between the two versions are that in the 1996 version, the provision at issue here is numbered paragraph 4(e), rather than 5(e), and states that a court may decline to attribute income to a parent in certain specified circumstances. The description of those circum-

stances does not include incarceration. We construe the 1994 version in this opinion.

2. Now section 25–320(I).

3. *See, e.g., Oberg v. Oberg,* 869 S.W.2d 235 (Mo. App.1993); *Davis v. Vance,* 574 N.E.2d 330 (Ind. App.1991).

gor's income would be set at the level it was prior to incarceration, and if that is the amount on which the prior support order was based, no modification would be appropriate.

¶ 11 The problem with this proposition is that it was essentially rejected by *Ayala*. There we noted that "[t]he growing trend appears to be that incarceration neither suspends a support obligation *nor prohibits a reduction in the amount of support.*" 185 Ariz. at 317, 916 P.2d at 507 (emphasis added). Consequently, in considering whether a deviation from the guidelines was appropriate, *Ayala* held "that it is properly within the trial court's discretion to consider a parent's incarceration as a factor in making [support] determinations." *Id.* at 318, 916 P.2d at 508. We see no reason to depart from *Ayala*, and we therefore reject the state's first proposition.

¶ 12 The state's alternative proposition is that both guideline 5(e) and section 25–320(I) are silent on whether incarceration can be considered in determining minimum wage earning capacity, and consequently this omission renders them both ambiguous. Thus, the state argues, a judicial construction of legislative intent regarding the extent of the presumption is required. In aid of such construction, the state proposes that compelling policy reasons require that the statute and guideline be interpreted to preclude incarceration from consideration.

¶ 13 We first note that because guideline 5(e) explicitly conditions its requirement to attribute minimum wage on compliance with the provisions of section 25–320(I), it is the statute that controls and which must be construed. The statute requires that a court presume an earning capacity of minimum wage "in absence of contrary testimony." By this language, the statute creates a presumption that can be rebutted by evidence showing that a minimum wage capacity cannot be achieved.[4]

¶ 14 It is the "in absence of contrary testimony" provision of section 25–320(I) that the state asserts needs interpretation. The state characterizes this language as "silence" on the question whether evidence of incarceration is competent to rebut the presumption of minimum wage earning capacity. The state uses this asserted ambiguity to urge that we should read into the statute, as a matter of policy, a prohibition against the consideration of incarceration in determining earning capacity.

¶ 15 In arguing policy, the state begins by pointing out that even though a parent is incarcerated, not only is that parent's duty to support not extinguished, but the child also remains in need of support. Consequently, someone has to step in and assume that burden and that someone is often the state welfare system. As a practical matter, the incarcerated obligor will probably not be able to earn the federal minimum wage and an arrearage will result. However, when the period of incarceration ends, the obligor can become employed and begin paying on the arrearage. This provides a mechanism whereby the taxpayers who have assumed the obligor's duty of support can recoup at least some of what was expended on behalf of the child. *See Douglas v. Department of Revenue*, 880 P.2d 113, 114 (Alaska 1994) (stating that a "parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes" (quoting *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987))).

¶ 16 While the state's policy rationale is persuasive, we are not permitted to arbitrarily read good policy into legislative enactments. Rather, we are constrained by the language actually used by the legislature and it is from that language that we must ascertain what that body intended. *See Lewis v. Department of Economic Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996).

---

4. This same rebuttable presumption must be read into guide-line 5(e) by virtue of its incorporation by reference of section 25–320(I). *City of Scottsdale v. McDowell Mountain Irrigation and Drainage Dist.*, 107 Ariz. 117, 121, 483 P.2d 532, 536 (1971) (statutes that relate to the same subject matter are to be read together and harmon-

ized so as to give effect to all provisions); *see also State v. Baca*, 187 Ariz. 61, 63, 926 P.2d 528, 530 (App.1996) (in construing rules of court, we apply the same rules of construction as are used in interpreting statutes). We consider child support guidelines to be in the category of rules of court.

¶ 17 We disagree with the state that the phrase "in absence of contrary testimony" in section 25–320(I) is at all ambiguous. To the contrary, it is quite clear and leaves no room for inserting a policy-driven restriction under the guise of statutory construction. The statutory language places no substantive restriction on the type of testimony which can be received, and testimony that an obligor is incarcerated is *prima facie* contrary to the presumption that he is able to earn minimum wage. If the legislature had wished to restrict the nature of acceptable testimony, it would have done so. In fact, it did restrict the application of the presumption in the second sentence of 25–320(I) by providing it should not apply to a minor still attending high school. A restriction on "contrary testimony" could just have easily been included had the legislature thought it appropriate. *Cf. Estate of Tovrea v. Nolan,* 173 Ariz. 568, 573, 845 P.2d 494, 499 (App.1992) (finding that "the statement of one exception implicitly denies the existence of other unstated exceptions").

¶ 18 When the language of a statute is clear and unambiguous, we follow the text as written. *Lewis,* 186 Ariz. at 614, 925 P.2d at 755. We find nothing in the text of section 25–320(I) that indicates the legislature intended anything other than the plain meaning of the terms used therein. Therefore, we hold that in a child support modification proceeding, evidence of incarceration can be admitted to rebut the presumption in section 25–320(I) that a child support obligor is capable of earning the federal minimum wage.

¶ 19 In this case, the trial judge concluded that she was bound to attribute the minimum wage to Warren. Consequently, she did not determine whether the testimony Warren presented rebutted the statutory presumption. Moreover, she did not determine Warren's actual earning capacity while imprisoned nor whether he had other assets or income on which to base an award of support. *See Ayala,* 185 Ariz. at 317–18, 916 P.2d at 507–08 (stating that a court must first assess an incarcerated obligor's available assets and income, including the opportunity for prison income, before deciding how to modify a child support award). We therefore vacate the order entered by the trial judge and remand for a further hearing on this issue.

## III. Other Modification Issues

¶ 20 Warren asserts that the trial judge abused her discretion in refusing to suspend his support obligation because Roberta denied him visitation. However, a custodial parent's denial of visitation rights does not necessarily relieve the noncustodial parent of his child support obligation. *See Campbell v. Campbell,* 126 Ariz. 558, 559, 617 P.2d 66, 67 (App.1980) (holding that father still owed duty of support despite mother's interference with father's right to custody); *Baures v. Baures,* 13 Ariz.App. 515, 517, 478 P.2d 130, 132 (1970) (holding that parent's removal of child from jurisdiction, thereby depriving obligor of opportunity for visitation, did not work forfeiture of child support payments). Rather, it is within the trial court's discretion to determine whether denial of visitation rights justifies suspension of the child support payment. *State ex rel. Arvayo v. Guerrero,* 21 Ariz.App. 173, 176, 517 P.2d 526, 529 (1973).

¶ 21 When Warren raised the visitation issue below, the trial judge advised him to file a petition to enforce visitation. Warren indicated he had already done so. The trial judge then declined to consider Warren's visitation argument on the basis that there was a pending petition on the matter before another judge. On this record, we find that the trial judge did not abuse her discretion in refusing to consider Warren's visitation argument.

¶ 22 Next, Warren claims the trial judge erred in failing to consider all of the factors for modification of support enumerated under A.R.S. section 25–320(A) (1991). We have recently addressed this issue in *Pearson v. Pearson,* 190 Ariz. 231, 946 P.2d 1291 (App.1997). The father in *Pearson* similarly asserted that courts modifying child support awards are required both to address the guidelines as well as all the specific factors set forth in section 25–320(A). We disagreed, holding that the statute merely sets forth factors the supreme court should use to establish guidelines, and that the court must

consider these factors "only if it intends to deviate from the Guidelines." *Id.* at 234, 946 P.2d at 1294. On remand, the trial judge may consider the statutory factors in connection with any deviation she may find appropriate.

¶ 23 Warren next alleges numerous constitutional violations in connection with his modification argument, including violation of the right to a fair trial, due process, double jeopardy, and cruel and unusual punishment. However, our disposition of the modification issue on statutory grounds obviates the need to address these alleged violations. *See R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist.,* 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997) (stating that reviewing court need not "reach a constitutional question if a case can be fairly decided on nonconstitutional grounds").

## IV. A.R.S. Section 25–511

¶ 24 A.R.S. section 25–511 imposes criminal liability on a parent who knowingly fails to support his child. The statute also provides that a voluntary reduction in income is not a defense to criminal liability. The state has candidly pointed out that if we accept its argument that incarceration must always be construed as a voluntary reduction of income, this would expand the scope of liability under section 25–511 beyond what the legislature might have intended.[5] However, since we did not accept the state's argument, no issue arises regarding this statute.

## CONCLUSION

¶ 25 The trial judge erred in finding that she lacked discretion to modify Warren's child support award below the federal minimum wage. We therefore vacate the child support order entered by the trial judge and remand with directions to determine whether Warren did in fact rebut the presumption that he was capable of earning minimum wage. If the court finds that the circum-

stances of Warren's incarceration rebut this presumption, the court shall then consider all other appropriate factors and modify the award accordingly.

VOSS, P.J., and KLEINSCHMIDT, J., concur.

---

5. For example, if an obligor is sent to prison for burglary, and his incarceration renders him unable to pay support, hypothetically, he could then be charged under section 25–511 for failure to pay child support. If we accepted the state's assertion that incarceration for any reason constituted a "voluntary" reduction of income, the incarcerated burglar could not defend against the non-support charge on the basis that his nonpayment was involuntary. The state concedes that the legislature may not have intended to so narrowly restrict the defense provided in section 25–511.