IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

IN RE THE MARRIAGE OF

ORETTE TARIZ SHAYANA MORRIS,
FKA ORETTE MANDEL,
*Petitioner/Appellant,*

*and*

CHRISTOPHER MANDEL,
*Respondent/Appellee.*

No. 2 CA-CV 2022-0083-FC
Filed April 25, 2023

———————————————

Appeal from the Superior Court in Pima County
No. D20201560
The Honorable Cynthia T. Kuhn, Judge

**AFFIRMED IN PART; REVERSED IN PART;
VACATED IN PART AND REMANDED**

———————————————

COUNSEL

Southern Arizona Legal Aid Inc., Tucson
By Christine Trueblood and Kristin Fitzharris
*Counsel for Petitioner/Appellant*

Law Office of Charles Brown PLLC, Phoenix
By Charles W. Brown Jr.
*Counsel for Respondent/Appellee*

_____

**OPINION**

_____

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

_____

S K L A R, Judge:

**¶1**         This case requires us to address the statutory framework for legal decision-making and parenting time when one parent has committed domestic violence. The trial court ordered Orette Morris and Christopher Mandel to share joint legal decision-making of their child. We conclude that A.R.S. § 25-403.03(A) precluded it from doing so because the court also found that Mandel had a significant history of domestic violence. We also conclude that the court did not abuse its discretion in increasing Mandel's parenting time as the child reached school age. Finally, we conclude that the court deviated from the child-support guidelines on past care and support without appropriately considering the relevant factors.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**         Morris and Mandel have one minor child, K.M., who was born in 2019. Morris filed a petition for dissolution in June 2020, when the parties lived in Arizona. That same month, Mandel filed his own petition for dissolution. The trial court treated that petition as a response to Morris's petition and consolidated the two cases.

**¶3**         With her petition, Morris filed a motion for emergency temporary orders. She asserted that Mandel had engaged in a significant history of domestic violence against her. She also sought a temporary order allowing her to relocate with K.M. to South Korea for a military deployment.

**¶4**         The domestic violence allegations arose in part from an incident in 2018 that led to Mandel pleading guilty to criminal charges. Because Mandel attended a diversion program, however, the charges were dismissed. Morris also obtained orders of protection against Mandel in 2019 and 2020. Both orders were affirmed after contested hearings. In addition, Mandel was jailed in 2019 for domestic violence against Morris.

Morris dismissed the 2019 order before it expired to allow Mandel to be present for K.M.'s birth.

**¶5**        After a hearing in July 2020, the trial court entered temporary orders granting sole legal decision-making to Morris.  The court reasoned that Morris had "shown by a preponderance of the evidence that there ha[d] been a significant history of domestic violence."  Therefore, the court concluded that "an award of joint legal decision-making is barred by A.R.S. § 25-403.03(A)."  The court also awarded primary parenting time to Morris in South Korea, with Mandel entitled to daily video calls and parenting time in South Korea during Morris's leave.

**¶6**        Over the next two years, while the dissolution was pending, Morris left the military, returned from South Korea, and moved to Massachusetts.  Mandel moved to South Carolina.  In May 2022, after a dissolution trial, the trial court issued a detailed ruling that included the parties' divorce decree.

**¶7**        In the decree, the trial court incorporated its prior finding that Mandel had engaged in a significant history of domestic violence.  It also awarded the parties joint legal-decision making.  In addition, it entered a parenting plan designating Morris as the primary residential parent, with Mandel having parenting time that would increase once K.M. began kindergarten.  Finally, it ordered Mandel to pay child support of $383 per month, and it ordered Morris to pay $2,439 in past care and support.

**¶8**        Morris appealed.  We have jurisdiction under A.R.S. § 12-2101(A)(1).

## TRIAL COURT JURISDICTION

**¶9**        Because Morris, Mandel, and K.M. had left Arizona by the time the trial court entered the decree's legal decision-making and parenting-time orders, we initially address the court's jurisdiction to enter those orders.  Neither party addressed this issue in its briefing, but we have an independent obligation to determine whether the court had subject-matter jurisdiction. *See Angel B. v. Vanessa J.*, 234 Ariz. 69, ¶ 5 (App. 2014).

**¶10**        Cross-jurisdictional       legal       decision-making       and parenting-time issues are governed by Arizona's Uniform Child Custody Jurisdiction and Enforcement Act, A.R.S. §§ 25-1001 to 25-1067 (UCCJEA).  Under the UCCJEA, the final orders were a "child custody determination," which is defined as a "permanent, temporary, initial and modification

order, for legal custody, physical custody or visitation with respect to a child." § 25-1002(3)(a). Legal decision-making is synonymous with "legal custody." A.R.S. § 25-401(3).

¶11 Determining whether the trial court had authority to enter the final orders requires us to first address whether it had authority to make an "initial" child custody determination. A court has such authority if Arizona was "the home state of the child on the date of the commencement of the proceeding." § 25-1031(A)(1). Here, when the proceedings commenced, Arizona was K.M.'s home state, as he lived here from his birth in 2019 until the proceedings commenced in June 2020. *See* § 25-1002(7)(a) (defining "home state" as "state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"). Thus, the court had jurisdiction to make an initial determination.

¶12 Here, the initial child custody determination came in the temporary orders. *See* § 25-1002(3)(a) (including temporary orders in definition of "child custody determination"), (8) (defining "[i]nitial determination"). As noted, though, the parties and K.M. left Arizona after the trial court made this determination and before trial. However, it does not follow that the court lost jurisdiction. *See* § 25-1031(C) ("Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination."). Rather, a court has jurisdiction to modify its initial determination "if it has jurisdiction to make an initial determination under § 25-1031." § 25-1032(B). As we have explained, the court had such jurisdiction. We therefore conclude that the court had jurisdiction to enter the final orders, and we proceed to the substantive issues.

## LEGAL DECISION-MAKING

¶13 Morris first challenges the trial court's award of joint legal decision-making. She argues that once the court found in its temporary orders that Mandel had engaged in a significant history of domestic violence, it lacked the authority to modify that finding in its final orders. But the final orders did not modify that finding. They incorporated it. We therefore need not address whether the court had the authority to modify the finding. Instead, we must address whether the court had the authority to award joint legal decision-making despite finding in its final orders that Mandel had a significant history of domestic violence.

¶14 We review the trial court's legal decision-making and parenting-time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, ¶ 4 (App. 2018). An abuse of discretion occurs when the court commits an error of law in reaching a discretionary conclusion or when the record lacks competent evidence to support the decision. *Id.*

¶15 The relationship between domestic violence and legal decision-making is governed primarily by A.R.S. § 25-403.03. When the trial court finds a parent has committed an act of domestic violence against the other parent, subsection (D) creates "a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests." § 25-403.03(D). But "[n]otwithstanding subsection D," when the court finds "significant domestic violence" or a "significant history of domestic violence," subsection (A) requires that "joint legal decision-making shall not be awarded." § 25-403.03(A).

¶16 Here, Mandel does not challenge the trial court's finding that Morris had met her burden of establishing a significant history of domestic violence by Mandel. Indeed, the court heard substantial evidence and testimony to support that finding, and it adequately explained the finding in its orders. At that point, no further analysis was needed. Under § 25-403.03(A), the court was precluded from ordering joint legal decision-making.

¶17 Nevertheless, the trial court undertook the analysis that applies when a parent has committed domestic violence that is not "significant," and it found that Mandel had rebutted the presumption against an award of legal decision-making. *See* § 25-403.03(D), (E). But as we have explained, subsection (D)'s rebuttable presumption did not apply.

¶18 Mandel argues that this result is unreasonable. He relies on the trial court's extensive findings that he had rebutted the presumption and that joint legal decision-making was in K.M.'s best interests. He also argues that as a public-policy matter, it is unfair to preclude a parent who has committed significant domestic violence or has a significant history of domestic violence from exercising joint legal decision-making. These arguments are foreclosed by the language of § 25-403.03(A). *See JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, ¶ 9 (App. 2019) ("When the statute is clear and unambiguous, we must apply its terms without further analysis."). We therefore vacate the award of joint legal decision-making and remand for the court to award sole legal decision-making to Morris.

**PARENTING TIME**

**¶19**        We turn next to parenting time.  The trial court ordered that until K.M. began kindergarten, Mandel would exercise parenting time for two continuous weeks at the end of each calendar quarter.  Once kindergarten began, Mandel's parenting time would increase to eight weeks in the summer, plus half of Christmas break and one week at spring break.  In addition, the court allowed him up to one week of parenting time per month in Morris's state of residence.

**¶20**        Morris argues that this arrangement improperly increased Mandel's parenting time once K.M. started kindergarten.  As with legal decision-making, we review parenting-time orders for an abuse of discretion and treat a legal error as such an abuse.  *Engstrom*, 243 Ariz. 469, ¶ 4.

**¶21**        Morris's argument is premised in part on Mandel's history of domestic violence.  Unlike with legal decision-making, our statutory scheme does not prohibit parenting time for a parent who has engaged in "significant domestic violence" or a "significant history of domestic violence."  Rather, parents who have committed domestic violence—"significant" or otherwise—must "prov[e] to the court's satisfaction that parenting time will not endanger the child or significantly impair the child's emotional development."  § 25-403.03(F).

**¶22**        If the parent does so, the trial court "shall place conditions on parenting time that best protect the child and the other parent from harm." *Id.*  The statute does not specify the conditions, but it provides that the court "may" issue certain orders, such as:  (1) requiring exchanges to occur in protected settings; (2) requiring the perpetrator to complete an intervention program; (3) prohibiting the perpetrator from consuming drugs or alcohol during parenting time; or (4) "impos[ing] any other condition that the court determines is necessary to protect the child, the other parent and any other family or household member."  *Id.*

**¶23**        As with all parenting-time decisions, the trial court must also conduct a best-interests analysis under A.R.S. § 25-403.  The existence of domestic violence and child abuse is one of that statute's eleven enumerated factors.  *See* § 25-403(A)(8).  It is also potentially relevant to other enumerated factors.  *See, e.g.*, § 25-403(A)(1) ("past, present and potential future relationship between the parent and the child"), (A)(5) ("mental and physical health of all individuals involved").  For all those

factors, courts must make specific findings on the record. *Hart v. Hart*, 220 Ariz. 183, ¶ 9 (App. 2009). The court must also consider domestic violence as contrary to the child's best interests, and it must consider the child and victim's safety to be "of primary importance." § 25-403.03(B).

**¶24** Here, the trial court engaged in a detailed analysis of K.M.'s best interests. It made findings under § 25-403 that addressed Mandel's history of domestic violence. Although the court gave weight to that history, it also found that Morris had withheld parenting time from Mandel and misled the court about K.M.'s whereabouts. In addition, the court found that K.M. had good relationships with both parents. Those findings are supported by the record, and we find no abuse of discretion.

**¶25** The trial court sufficiently addressed subsection (F), despite Morris's suggestion to the contrary. Although the court did not expressly say so, it necessarily found that Mandel proved parenting time would not endanger K.M. or significantly impair his emotional development. The court noted that the parties had agreed Mandel could exercise unsupervised parenting time, the domestic violence had occurred years earlier, and K.M. was physically and mentally healthy. In addition, Morris proposed a parenting plan that allowed Mandel to exercise parenting time.

**¶26** The trial court also addressed the conditions that may be imposed under § 25-403.03(F). First, it found that Mandel had completed a batterer's prevention program, which is one such condition. It also limited communication during exchanges to further protect the parties. *See* § 25-403.03(F)(1) (allowing court to order that exchanges occur in protected setting), (F)(9) (allowing court to impose other necessary conditions). Expressly citing subsection (F) in this analysis would have been a better practice. But because the court substantively addressed it, doing so implicitly was sufficient.

**¶27** Nor do we find an abuse of discretion in the trial court's parenting-time orders. The court reasonably recognized that as children enter school, parenting-time arrangements must account for school schedules. The two-weeks-per-quarter arrangement for K.M.'s pre-kindergarten years would not work with most school calendars. As a result, the court crafted a schedule that would comply. Morris has also pointed to no authority that precludes a court from gradually increasing a parent's parenting time. Rather, the increase comports with the public policy that absent evidence to the contrary, it is in a child's best interests to have "substantial, frequent, meaningful and continuing parenting time

with both parents." A.R.S. § 25-103(B)(1). We therefore affirm the parenting-time orders.

## CHILD SUPPORT

¶28 In calculating past care and support, the trial court treated the parties as if they had equal parenting time through March 2022, although Mandel had exercised little time. The court reasoned that it was "appropriate to attribute equal parenting time based on Father's inability to exercise parenting time with the minor child internationally, or without a tremendous financial burden." Morris challenges this conclusion.

¶29 Child-support awards are within the trial court's discretion, and we review them only for an abuse of that discretion. *State ex rel. Dep't of Econ. Sec. v. Ayala*, 185 Ariz. 314, 316 (App. 1996). As with legal decision-making and parenting time, a legal error in reaching a discretionary conclusion is an abuse of discretion. *In re Marriage of Robinson & Thiel*, 201 Ariz. 328, ¶ 5 (App. 2001).

¶30 Application of the child-support guidelines is mandatory. A.R.S. § 25-320(D) ("The amount resulting from the application of the[] guidelines is the amount of child support ordered . . . ."). Under the guidelines, trial courts must calculate parenting time based on either a "court order, a parenting plan, by the parents' expectation, or by historical practice." A.R.S. § 25-320 app. § V(C).

¶31 In certain circumstances, however, the trial court "must deviate" from the child-support guidelines. Before ordering a deviation, the court must "consider[] all relevant factors." § 25-320 app. § IX(B). These factors include those set forth in § 25-320 and applicable case law. *Id*. The court must: (1) conclude that applying the guidelines is inappropriate or unjust; (2) consider the child's best interests; (3) make written findings why application of the guidelines is inappropriate and unjust, as well as why a deviation is in the child's best interests; (4) show in its order the amount of the award without a deviation; and (5) show in its order the amount after deviating. *Id.*

¶32 Here, we agree with Morris that, in the past-care-and-support ruling, the trial court did not calculate parenting time based on "court order, a parenting plan, by the parents' expectation, or by historical practice," as required by § 25-320 app. § V(C). It instead considered a different factor, namely, Mandel's inability to exercise parenting time given

the distance between the parties. The court erred in calculating parenting time in this manner, as it is unsupported by the statute or guidelines.

**¶33** Of course, the trial court was authorized to deviate from the guidelines. That was arguably the effect of its decision. In fact, the child-support guidelines provide that a deviation may be warranted where the parenting plan "will require a parent to incur significant travel expenses related to parenting time and the cost thereof in combination with child support may impede the parent's ability to exercise parenting time." § 25-320 app. § IX(D)(4). The court concluded, however, that "[n]o evidence was presented to support a deviation." It also did not follow the procedure for a deviation, which includes making findings and incorporating child-support worksheets showing the deviation. Accordingly, the decision constituted a legal error.

**¶34** We therefore vacate the trial court's decision on past care and support and remand for additional proceedings consistent with this decision. In its discretion, the court may order a deviation from the child-support guidelines if it follows the required procedures and considers the required factors.

## ATTORNEY FEES AND COSTS ON APPEAL

**¶35** Mandel requests an award of attorney fees and costs on appeal under Rule 21, Ariz. R. Civ. App. P., and A.R.S. § 25-324. Section 25-324 allows a court to award a party reasonable attorney fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." Having reviewed the record as to the financial resources of both parties and considered the reasonableness of the parties' positions, we deny Mandel's request for attorney fees in our discretion. *See Doherty v. Leon*, 249 Ariz. 515, ¶ 24 (App. 2020).

**¶36** Mandel is also not the prevailing party on appeal, as Morris prevailed on more issues. Mandel is therefore not entitled to his costs on appeal. *See id*. Although Morris did not request fees on appeal, we conclude that she is the prevailing party, so she is entitled to her costs upon compliance with Rule 21(b). *See id*.

## DISPOSITION

**¶37**　　　We reverse the trial court's decision to award the parties joint legal decision-making, and we vacate the decision on past care and support. We remand with directions that the court enter a new decree that awards sole legal decision-making to Morris and addresses past care and support in a manner consistent with this opinion.  We otherwise affirm.