955 P.2d 973

**In re the Marriage of Patricia G. MURREN, Petitioner–Appellee,**

**Mildred and John GRAZIANO, Real Parties in Interest,**

v.

**James A. MURREN, Respondent–Appellant.**

**No. 1 CA–CV 97–0413.**

Court of Appeals of Arizona, Division 1, Department B.

March 17, 1998.

---

Burton & Leather & Associates by James L. Leather, Charles B. Burton, Brian Dando, Phoenix, for Real Parties in Interest.

Frank L. Ross, Goodyear, for Respondent–Appellant.

## OPINION

GERBER, Judge.

¶ 1   James H. Murren ("Murren") appeals from the trial court's order calculating his child support arrearage obligation and denying his motion to terminate an order of wage assignment.   The sole issue he raises is whether a judgment creditor is bound by the amount stated in a judgment renewal affidavit filed pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–1612 (1994).   That issue is irrelevant, however, because another statute specifically applying to money judgments for child support arrearages does not require a judgment creditor to file such a renewal affidavit.   *See* A.R.S. section 25–503(J) [1].   We therefore affirm the trial court's order regarding the arrearages amounts.   We also hold that A.R.S. section 25–503(J)'s reference to "[m]oney judgments for child support arrearages established during the minority of the children" refers to judgments established during the minority of *any* of the children.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2   When James and Patricia Murren were divorced in 1976, the decree ordered James to pay one hundred dollars per month

---

1.  Initially A.R.S. section 12–2453, 1977 Ariz. Sess. Laws Ch. 40, § 2. Renumbered as section 25–503(F), 1996 Ariz. Sess. Laws, Ch. 192, §§ 7, 48; redesignated as section 25–503(J), 1997 Ariz. Sess. Laws, Ch. 219, § 5.

for the support of each of his two children, a daughter born in 1972 and a son born in 1976.

¶3 In 1990, appellees Mildred and John Graziano ("the Grazianos"), as the children's guardians and conservators, brought an action for child support arrearages. In April 1991, the trial court entered a judgment for the Grazianos in the amount of $23,532.76, with interest at ten percent per year from the date of the judgment.

¶4 Five years later, the Grazianos filed a judgment renewal affidavit pursuant to A.R.S. section 12–1612. The affidavit stated the total amount of the 1991 judgment, Murren's payments against the judgment, and a total amount of $12,365.59 in principal due and owing, plus interest and accruing costs.

¶5 Murren then moved to terminate both the child support and assignment orders. The Grazianos opposed his motion and attached a copy of their judgment renewal affidavit. The trial court found that Murren's support obligation for his younger child had ended on December 1, 1995 and that support payments after that date should have been credited to the arrearages. The court then ordered each side to recalculate the arrearages.

¶6 The Grazianos' new calculations showed over $31,000 due on the judgment as of December 1995. They asserted that the renewal affidavit had omitted the accruing interest and thus preserved their claim to sums in excess of the $12,000 figure accrued before December 31, 1995. Murren responded that the Grazianos were bound by the amount claimed in the renewal affidavit.

¶7 The trial court found that the arrearages should include interest from the entry of the judgment to the date of the renewal affidavit and approved the Grazianos' method of calculating the arrearages. It found the total sum in error, however, because only one child remained a minor during the relevant time period. The Grazianos again recalculated the arrearages, and the trial court entered an order showing a principal balance due in September 1996 of $23,829.14. It accordingly denied Murren's motion to terminate the

order of wage assignment. We have jurisdiction of Murren's appeal pursuant to A.R.S. section 12–2101(E).

## DISCUSSION

¶8 Murren's sole assertion is that the trial court violated A.R.S. section 12–1612(D) by determining his arrearage to be an amount greater than that stated in the renewal affidavit. The record does not clearly indicate the basis of the trial court's decision. Nevertheless, "[w]e must affirm if there is any proper basis to do so. And because no fact findings were requested, we must assume that the trial court resolved every issue of fact in a way that supports the judgment." *Crye v. Edwards,* 178 Ariz. 327, 328, 873 P.2d 665, 666 (App.1993) (citations omitted).

¶9 Apparently, neither party to this appeal was aware of A.R.S. section 25–503(J), which addresses the life of judgments for child support arrearages.

*A. Neither A.R.S. Section 12–1612(D) Nor Section 12–1551(B) Applies*

■ ¶10 Although A.R.S. section 12–1551(B) bars execution upon other judgments after five years unless the creditor has renewed the judgment by affidavit or process, a judgment for child support arrearages escapes that statute. Section 12–1551(D) clarifies that the general limitation on execution of other judgments "does not apply to judgments and orders for the support of a minor.... There is no requirement to renew such judgments and orders during the minority of the children.... Such actions are limited only as required by § 12–2453, subsection E." A.R.S. § 12–1551(D) (1994) [2].

■ ¶11 A.R.S. section 12–2453(E), renumbered in 1996 as section 25–503(F) and redesignated in 1997 as section 25–503(J), provides that "[m]oney judgments for child support arrearages established during the minority of the children are not barred or limited in enforcement and collection unless they are not renewed within ten years after the emancipation of all of the children who were the subject of the court order." Stated

---

2. Amended 1996 Ariz. Sess. Laws Ch. 192, § 20; 1997 Ariz. Sess. Laws Ch. 219, § 2.

affirmatively, the statute appears to provide that a money judgment for child support arrearages remains enforceable for ten years after the emancipation of all of the children subject to a support order.

*B.   A.R.S. Section 25–503(J) Does Apply, and No Renewal Affidavit Was Necessary*

■ ¶ 12   As we read the statute, it clearly applies to the Grazianos' arrearages judgment and renders their renewal affidavit unnecessary.   As noted, unlike other judgments, a judgment for child support arrearages remains enforceable without renewal for "ten years after the emancipation of *all* of the children who were the subject of the court order."   A.R.S. § 25–503(J) (emphasis added).   The trial court found that Murren's younger child was emancipated on December 1, 1995.   Thus, the Grazianos did not need to renew their 1991 judgment in 1996 because by operation of this statute, their judgment remains valid for ten years after December 1, 1995.

¶ 13   Furthermore, because the renewal affidavit was unnecessary, we conclude that it is irrelevant to the enforcement or collection of the underlying judgment.   By enacting section 25–503(J) and extending the life of child support arrearage judgments substantially beyond that for all other judgments, the legislature has demonstrated a strong public interest in enforcing these child support judgments.   The filing of an unnecessary renewal affidavit does not waive or otherwise affect the Grazianos' right to collect the arrearages even if their affidavit misstated the amount of those arrearages.

*C.   A.R.S. Section 25–503(J) Applies to Judgments Obtained During the Minority of Any of the Children*

■ ¶ 14   Next, we consider whether the fact that the Grazianos obtained the arrearage judgment during the minority of one but not both children alters our analysis.   Section 25–503(J) extends the life of arrearages judgments secured "during the minority of the children."   A.R.S. § 25–503(J).   It also provides that a person entitled to support may "file an action within three years after the emancipation of the youngest of all of the children" and with "no bar to the establishment of a money judgment for all of the

unpaid child support arrearages for the entire minority of the children."   A.R.S. § 25–503(J).

¶ 15   Granting a right to sue for child support even after the youngest child has reached the age of majority is strong evidence that the legislature did not intend to measure the life of arrearage judgments from the minority of *all* of the children.   The need to recover the arrearage may be just as compelling after one or more children have reached majority, particularly if a long history of nonpayment exists.   The statute's purpose is to facilitate the recovery of arrearages even after majority.   To require renewal after five years for some but not all such judgments is inconsistent with that purpose.   Further, no logical reason would bar collection of an existing judgment due to nonrenewal within section 12–1551's five year period and yet allow a person to obtain a new judgment three years after the last child's emancipation under section 25–503(J).

¶ 16   Finally, we note that the statute further requires that "[i]f emancipation is disputed, this subsection shall be liberally construed to effect its intention of diminishing the limitation on the collection of child support arrearages."   A.R.S. § 25–503(J).   Although emancipation is not disputed here, this liberal rule of construction confirms our view that judgments established during the minority of *any one of* the children, including the youngest, benefit from the continuing vitality offered by the statute.   An extended period for enforcement of a child support judgment before a judgment creditor must begin the complicated and precise renewal procedures clearly advances the public goal of expediting collection of child support arrearages.

¶ 17   We hold that neither the renewal affidavit nor the emancipation of one of Murren's children impairs enforcement of the Grazianos' judgment for child support arrearages.   We affirm the trial court's order declaring the amount of those arrearages.

EHRLICH, P.J., and TOCI, C.J., concur.