IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE MH2015-002490
MH2015-004896

---

ARIZONA DEPARTMENT OF HEALTH SERVICES, ARIZONA STATE
HOSPITAL, *Intervenor/Appellant*

and

MARICOPA COUNTY SPECIAL HEALTHCARE DISTRICT d/b/a
MARICOPA INTEGRATED HEALTH SYSTEM, *Intervenor*.

No. 1 CA-MH 15-0107, 1 CA-MH 16-0021 (Consolidated)
FILED 5-1-2018

---

Appeal from the Superior Court in Maricopa County
No.  MH2015-002490, MH2015-004896
The Honorable Andrew G. Klein, Judge
The Honorable Barbara L. Spencer, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Aubrey Joy Corcoran, Louis Frank Caputo, III
*Counsel for Intervenor/Appellant*

Dickinson Wright, PLLC, Phoenix
By David J. Ouimette, Vail C. Cloar
*Counsel for Intervenor*

## OPINION

Judge Kenton D. Jones delivered the Opinion of the Court, in which Presiding Judge Randall M. Howe and Judge James B. Morse Jr. joined.

J O N E S, Judge:

¶1        In this consolidated appeal, Intervenor Arizona State Hospital (ASH)[1] challenges orders involuntarily committing Edgar T. and Juan A. (the Patients) for inpatient psychiatric treatment.  Both Patients were deemed incompetent to stand trial for violent crimes, but upon commitment were unable to provide documentation establishing their lawful presence in the United States.  ASH argues it cannot comply with the commitment orders without violating state and federal law governing the provision of state and local public benefits to unauthorized aliens.

¶2        As a matter of first impression, we consider whether court-ordered psychiatric treatment is a "state and local public benefit," as defined within 8 U.S.C. § 1621(c)[2] and A.R.S. § 1-502(I).  Because individuals subject to court-ordered psychiatric treatment do not "apply" for the services, the treatment is not a "benefit" within the meaning of those statutes.  Accordingly, we affirm the superior court's orders.

## FACTS AND PROCEDURAL HISTORY

¶3        In 2013, Edgar was charged with one count of aggravated assault and one count of assault by a prisoner with bodily fluids.  Edgar spat upon an officer who tried to end a fight between Edgar and another inmate in the medical area of the Durango Jail.  In 2015, Juan was charged with aggravated assault and criminal trespass after attacking officers who tried to remove him from a dumpster in which he had been living for four

---

[1]        ASH is a "state hospital . . . maintained for the care and treatment of persons with mental disorders and persons with other personality disorders or emotional conditions" under the "charge and control" of the Arizona Department of Health Services (AZDHS).  *See* Ariz. Rev. Stat. (A.R.S.) § 36-202(A), (D) (2018).  For simplicity, we refer to AZDHS and the state mental hospital, collectively, as ASH.

[2]        Absent material changes from the relevant date, we cite a statute's current version.

days. When the officers tried to move Juan, he refused to obey orders and swung a board at one of them. Ultimately, the officers resorted to the use of pepper spray to subdue him.

¶4 In March 2014 and July 2015, the criminal court found the Patients incompetent to stand trial and dismissed the charges pending against them without prejudice. The court ordered the Maricopa County Attorney's Office (MCAO) to file a petition for court-ordered psychiatric evaluation. *See* A.R.S. §§ 13-4517(A)(1) (authorizing the court to "[r]emand the defendant to an evaluating agency for the institution of civil commitment proceedings" if it finds he is "incompetent to stand trial and that there is no substantial probability that the defendant will regain competency within twenty-one months"); 36-521(F) (authorizing the county attorney to file the petition for evaluation if court-ordered). Both Patients were evaluated, and their evaluators filed petitions for court-ordered treatment pursuant to A.R.S. § 36-531(B) (stating that, upon a determination that a patient is disabled or dangerous, the appropriate person "shall prepare, sign and file a petition for court-ordered treatment"). After considering the petitions, the superior court in both cases found the Patients to be "persistently and acutely disabled." The court also found Juan to be "a danger to others." Both Patients were ordered to submit to inpatient psychiatric treatment at ASH.

¶5 ASH moved to intervene in both cases, asking the superior court to reconsider the commitment orders — not because its findings were incorrect, but because the Patients were unable to provide documents establishing their lawful presence in the United States, and therefore were ineligible to receive public benefits. The court granted the motion to intervene but declined to reconsider its orders, and ASH timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).[3]

¶6 On appeal, this Court granted the Maricopa County Special Healthcare District (the District) leave to intervene as well. The District operates Desert Vista Behavioral Health Center (Desert Vista), a facility that provides short-term court-ordered evaluation and treatment for

---

[3] Both treatment orders have expired, but the Patients remain persistently and acutely disabled and are still committed to ASH. Although the orders themselves are moot, we consider the merits of the appeal "because the issue presented is of statewide importance and capable of evading review." *In re MH-2008-000867*, 225 Ariz. 178, 179, ¶ 1 (2010) (citing *Coconino Cty. No. MH 1425*, 181 Ariz. 290, 292 (1995)).

individuals with mental disabilities, and therefore has an interest in the outcome of our decision.

## DISCUSSION

¶7 The parties dispute whether court-ordered psychiatric treatment is a "state and local public benefit" subject to immigration verification. We review issues of statutory interpretation *de novo*. *In re MH2010-002637*, 228 Ariz. 74, 78, ¶ 13 (App. 2011) (citation omitted). "When interpreting a statute, our primary purpose is to give effect to the intent of the legislature." *Pinal Cty. No. MH-201000029*, 225 Ariz. 500, 502, ¶ 6 (App. 2010) (citing *Maricopa Cty. No. MH 2001-001139*, 203 Ariz. 351, 353, ¶ 12 (App. 2002)). "The best indicator of that intent is the statute's plain language, and, if that language is clear and unambiguous, we apply it as written." *State ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.* (*MCCCDB*), 242 Ariz. 325, 338, ¶ 39 (App. 2017) (quoting *State v. Liwski*, 238 Ariz. 184, 186, ¶ 5 (App. 2015)).

## I.     Court-Ordered Psychiatric Treatment Is Not a "Public Benefit" as Defined by 8 U.S.C. § 1621(c).

¶8 In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), which restricts welfare and public benefits for aliens. *See generally* Pub. L. No. 104-193, tit. IV, §§ 400-51, 110 Stat. 2105, 2260-77 (1996) (partially codified as amended at 8 U.S.C. §§ 1601 to 1646). PRWORA defines which groups of non-citizens qualify to receive state and local public benefits. Under PRWORA, "state and local public benefits," include:

> any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual . . . by an agency of a State or local government or by appropriated funds of a State or local government.

8 U.S.C. § 1621(c)(1)(B).

¶9 ASH argues the phrase "any health benefit" in the federal statute includes the involuntary civil commitment that occurred in these cases. This takes § 1621(c) out of context, however. The meaning of this language is clear when considered within the context of the statutory scheme as a whole. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by

reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") (citations omitted); *J.D. v. Hegyi*, 236 Ariz. 39, 41, ¶ 6 (2014) (explaining that, when interpreting a statute, the words "cannot be read in isolation from the context in which they are used") (citing *Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135, ¶ 34 (2011)). When read as a whole, the unambiguous language in PRWORA limits the definition of public benefits to those benefits for which an individual applies. By its terms, PRWORA is intended to address concerns regarding the "self-sufficiency" of immigrants, given that "aliens have been *applying for* and receiving public benefits . . . at increasing rates." 8 U.S.C. § 1601(1), (3) (emphasis added). Thus, PRWORA authorizes individual states "to require an *applicant* for State and local public benefits . . . to provide proof of eligibility." 8 U.S.C. § 1625 (emphasis added). In contrast, PRWORA confers no rights or responsibilities upon individual states with regard to services imposed upon a person by court order. Because "state and local public benefits," within the context of PRWORA, unambiguously refers to benefits for which an individual voluntarily applies, we hold court-ordered psychiatric treatment is not a public benefit as defined by 8 U.S.C. § 1621(c)(1).[4]

¶10 Even if the statutory language of PRWORA were ambiguous, this Court would reject ASH's interpretation of "state and local public benefits" because it would lead to absurd results. *See Compassionate Care Dispensary, Inc. v. AZDHS*, 782 Ariz. Adv. Rep. 12, *5, ¶ 23 (App. Jan. 16, 2018) (refusing to "advance an interpretation that leads to . . . an absurd result" when resolving statutory ambiguities) (citing *AEA Fed. Credit Union v. Yuma Funding, Inc.*, 237 Ariz. 105, 109, ¶ 13 (App. 2015)). If statutory language is ambiguous, we determine legislative intent by "considering the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *MCCCDB*, 242 Ariz. at 338, ¶ 39 (quoting *Calik v. Kongable*, 195 Ariz. 496, 500, ¶ 16 (1999)).

¶11 ASH maintains "the method used to provide [mental health services] — voluntary admission or involuntary commitment — does not

---

[4] At oral argument, ASH conceded that a public benefit must be applied for but argued the State and the evaluators effectively applied for mental health treatment on the Patients' behalf through the petitions for court-ordered evaluation and treatment. We disagree. MCAO did not apply to a treatment provider for mental health services; it petitioned the superior court for an *order* requiring the Patients to be evaluated, and then the evaluators petitioned the court for an *order* finding involuntary psychiatric treatment was necessary.

change their classification as public benefits." Instead, ASH argues, "the provision of free mental health services and treatment, together with other benefits associated with inpatient treatment — room, board, and physical medical examinations and treatment" — is the public benefit provided to the Patients. However, if voluntariness were truly irrelevant in defining "public benefit," the incarceration of persons unable to prove their lawful presence would likewise violate PRWORA because the State is required by law to provide prisoners the same "benefits" ASH argues should be denied the Patients — room, board, and physical and mental health examinations and treatment. *See* A.R.S. §§ 31-121(A) ("The sheriff shall receive all persons who are committed to jail by competent authority and provide them with necessary food, clothing and bedding, the cost of which shall be a county charge."); -201.01(B), (D) ("[T]he director may, in cooperation with [AZDHS], provide to prisoners psychiatric care and treatment . . . [and] shall provide medical and health services for the prisoners."). Even ASH concedes incarceration, and its incidentals, do not constitute a "benefit," arguing the provisions are imposed upon the prisoner as a punishment.[5]

**¶12** Additionally, ASH tacitly acknowledged within the commitment proceedings below that its interpretation would increase the risk to public safety. In its motion for reconsideration, ASH stated it was "left with a Hobson's choice: break the law and indefinitely commit a person or potentially increase the risk to public safety." Indeed, interpreting court-ordered psychiatric treatment as a "state or local public benefit" subject to immigration verification would allow the Patients — who have already been determined to be a danger to themselves and others — to be released back into the general public because no viable alternative exists. The State is unable to prosecute and incarcerate the Patients because they are incompetent to stand trial for the violent crimes they allegedly committed. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (recognizing

---

[5] ASH argues this Court should not compare involuntary civil commitment to incarceration, citing *MH-2008-000867*, in which our supreme court held the confrontation clause did not apply to civil commitment proceedings and stated, "a civil commitment proceeding should not be constitutionally 'equated to a criminal prosecution' because the state is not acting in a punitive manner." 225 Ariz. at 180-81, ¶ 8 (quoting *Addington v. Texas*, 441 U.S. 418, 428 (1979)). However, the narrow issue there — whether the admission of evidence in a particular manner comported with the patient's due process rights, *id.* at 179, 182, ¶¶ 1, 14 — does not foreclose all future comparisons, particularly here, where we consider the interplay between federal immigration law and state statutes authorizing courts to order psychiatric treatment.

"the criminal trial of an incompetent defendant violates due process") (citations omitted). Moreover, the District's facility, Desert Vista, is not equipped for long-term psychiatric care, and, unlike ASH, does not offer "maximum security." *See* A.R.S. § 36-212 (requiring the state mental hospital to designate and operate a "maximum security area"). Although ASH suggests undocumented patients could be committed to a private hospital, a private hospital must first agree to take them. *See* A.R.S. § 36-540(A)(3) (authorizing the court to order "[i]npatient treatment in . . . a private hospital," but only "if the private hospital agrees"). Moreover, it is unclear how ASH perceives the expenditure of state monies applied to the commitment of individuals to ASH is a violation of PRWORA, but the expenditure of state monies to pay for the commitment of individuals to Desert Vista or a private hospital is not.

¶13 The statutory language is clear and unambiguous when read within the context of the statutory scheme as a whole. And, as noted above, even if it were ambiguous, we would not advance an interpretation that lead to absurd results. Accordingly, we hold that court-ordered psychiatric treatment is not a public benefit as defined by 8 U.S.C. § 1621(c).[6]

## II. Court-Ordered Psychiatric Treatment Is Not a "Public Benefit" as Defined by State Law.

¶14 ASH separately asserts that involuntary civil commitment is a "public benefit" not available, under state law, to a person who cannot prove his lawful presence. The Arizona State Legislature has adopted PRWORA's general definition of "state or local public benefits." *See* A.R.S. § 1-502(I). And like PRWORA, the statute's unambiguous purpose is to restrict the availability of public benefits for which an individual must apply. Section 1-502(A) states:

---

[6] ASH relies heavily upon 8 U.S.C. § 1621(b)(4) (granting the U.S. Attorney General sole discretion to exempt certain state or local public benefits from PRWORA's restrictions), and U.S. Attorney General Order No. 2353-2001, 66 Fed. Reg. 3613 (Jan. 16, 2001) (specifying "the types of community programs, services, or assistance for which all aliens remain eligible"), to argue ASH's treatment was not an exempt state or local public benefit. This argument is only relevant if one begins with the assumption that court-ordered psychiatric treatment is a public benefit. Because we hold otherwise, we need not address this argument further.

[A]ny agency of this state or a political subdivision of this state that administers any state or local public benefit shall require each *natural person* who *applies for* the state or local public benefit to submit at least one of the following documents . . . demonstrating lawful presence in the United States.

(Emphasis added). Thus, the state statute also applies only to benefits for which a person voluntarily applies.

¶15    We find further support in A.R.S. § 13-4517(B), which, as amended in 2017, explicitly distinguishes court-ordered psychiatric treatment from "public benefits." That statute authorizes the superior court, after determining a defendant incompetent to stand trial, to order "an assessment of the defendant's eligibility for private insurance or public benefits that may be applied to the expenses of the defendant's medically necessary maintenance and treatment." A.R.S. § 13-4517(B). Although the relevant language was added after the Patients were deemed incompetent, it demonstrates that the Legislature does not consider court-ordered psychiatric treatment to be a public benefit in and of itself, but rather, as a circumstance whose expense might be mitigated through the use of public benefits, when available. Indeed, the Legislature specifically identified public benefits that could be used to offset the costs of court-ordered psychiatric treatment, including: "[the Arizona Health Care Cost Containment System], state-only behavioral health services, [Social Security] services and [M]edicare part D prescription drug benefits, supplemental security income and supplemental security disability income." A.R.S. § 13-4517(B).

¶16    In a final public policy argument, ASH contends that because it "is not required to provide civil commitment treatment that exceeds the funded capacity," A.R.S. § 36-503.03, a U.S. citizen may be denied access to necessary services if its beds are filled by individuals not lawfully present in the United States. This argument is unpersuasive given that the maximum capacity of ASH is recalculated each year after collecting census data, *see* A.R.S. §§ 36-206(D), -503.03, and that the state maintains a contingency plan for the placement of patients in times of emergency and other unforeseen circumstances, *see* A.R.S. § 36-206(D). Thus, the Legislature has provided avenues for ASH to avoid potential capacity problems.

## CONCLUSION

**¶17**     Court-ordered psychiatric treatment is not a public benefit as defined by 8 U.S.C. § 1621(c) and A.R.S. § 1-502(I).  Accordingly, we affirm the superior court orders.



AMY M. WOOD • Clerk of the Court
FILED:  AA